UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

CASE NO. 1:04-CR-10231

_____
                                    )
UNITED STATES OF AMERICA            )
                                    )
V.                                  )
                                    )
PETER V. MAGGIO                     )
                                    )
_____)

### DEFENDANT MAGGIO'S SENTENCING MEMORANDUM

#### I.      INTRODUCTION

The instant memorandum has been prepared to assist the Court when fashioning an appropriate sentence for the Defendant Peter V. Maggio. The Court will note that the Defendant Maggio entered pleas of guilty to all counts of the indictment. There is no plea agreement with the Office of the United States Attorney.

The Defendant Maggio seeks a downward departure from the applicable sentence guideline range, based on a number of factors. Even if the Court determines that each of the individual factors alone do not warrant a downward departure, taken together they provide a platform from which this Honorable Court can, in the exercise of its discretion, impose a downward departure sentence.

As more fully set forth below, the Defendant Maggio respectfully submits that there exists a substantial basis for this Honorable Court to impose a sentence below the applicable guideline range. Those reasons include, but are not limited to the substantial assistance provided by the Defendant in the instant case and other matters, the Defendant's extraordinary family obligations, and his diminished capacity as a result of his bipolar condition. In addition, counsel respectfully submits that a downward departure sentence would avoid creating a severe sentence disparity between the

1

Defendant Maggio, and Jeffrey A. DeVeau, a similarly situated defendant, and that his sentence should be no higher than one needed to meet the statutory goals.

The Defendant submits that the unusual facts of this case are such that the Court can impose a downward departure from the otherwise applicable guideline range of imprisonment. The Supreme Court has provided that a sentencing court has vast discretion in determining the appropriate sentence to impose and may depart downward from the otherwise applicable guideline range of imprisonment. United States v. Koon, 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). In the words of the Guidelines themselves,

> "when a court finds an atypical case, one to which a particular guideline linguistically applies, but where conduct significantly differs from the norm, the court **may** consider whether a departure is warranted . . . the Commission does not intend to limit the kinds of factors, whether or not listed in anywhere else in the guidelines, that could constitute grounds for departure in an unusual case."

> "A district court's decision to depart from the Guidelines…will in most cases be due substantial deference, for it embodies the traditional exercise of discretion by a sentencing court…The district court must make a refined assessment of the many facts bearing on the outcome, informed by its vantage point and day to day experience in criminal sentencing. Whether a given factor is present to a degree not adequately considered by the Commission, or whether a discouraged factor nonetheless justifies departure because it is present in some unusual or exceptional way, are matters determined in large part by comparison with the facts of other Guideline cases. District courts have an institutional advantage over appellate courts in making these sorts of determinations, especially as they see so many more Guidelines cases than appellate courts do."

Further, the majority opinion set forth in United States vs. Booker, 125 S.C. 738, 748-750 (2005) clearly indicates that the guidelines are advisory, and this Court must consider the guideline ranges, as well as factors set forth in Title 18 U.S.C. §3553a (4), as well as other statutory factors set forth in §3553 a.

The sentencing court must now consider all of the factors set forth in 18 U.S.C. §3553a not just the guidelines and policy statements of the guidelines manual.

See <u>Booker</u>, 125 S.C. at 757.  See also <u>United States vs. Crosby</u>, 397 F.3d 103 (2nd Cir. February 2, 2005), <u>United States vs. Hughes</u>, 401 F.3d 540 (4th Cir. March 16, 2005). The new mandatory principle as set forth appears to be a limiting one in that the sentence must be "sufficient but not greater than necessary to fulfill (¶2) the need for the sentence imposed-."

> A.  To reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense;
> B.  To afford adequate deterrents to criminal conduct;
> C.  To protect the public from further crimes of the defendant, and;
> D.  To provide the defendant with needed educational and/or vocational training, medical care or other correctional treatment in the most effective manner. 18 U.S.C. §3553 (a)(2).

This has been referred to as the "Parsimony Principle."  See <u>United States vs. Gray</u>, F. Supp. 2d (S. Dist. WVA, March 17, 2005), <u>United States vs. Angelos,</u> 345 F. Supp. 2nd 1227 (D. Utah, November 16, 2004).

The factors the Court "shall consider" in determining a sentence that is sufficient but not greater than necessary are;

> 1.)  Nature and circumstance of the offense as well as the history and characteristics of the defendant.
> 2.)  The purposes of sentences above.
> 3.)  The kinds of sentences available.
> 4.)  Advisory guidelines.
> 5.)  Any pertinent policy statement in the guidelines manual including departures.
> 6.)  A need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct.
> 7.)  The need to provide restitution to any victims of the offense.  See <u>United States vs. Pimental</u>, F. Supp. 2d, 2005 (W.L. 958245) (D.

3

Mass. April 15, 2005).

It is acknowledged that this Court may "depart" more freely than the strict pre-Booker regime would have allowed. See <u>United States vs. Bailey</u>, No. 4, 02CR3040, slip opinion at 16-21 (D. Neb. May 12, 2005), (Kopf, J.), (The court noted that the guidelines "are not as rigid as we make out" and departed 8 levels to probation based on family circumstances in a child pornography case). See also <u>United States vs. Perez-Chavez</u>, No. 2; 05-CR00003PGC, 24-26 (D. Utah, May 16, 2005)( Cassell, J.) (departing for family circumstances).

To this end, the defendant notes that the Sentencing Reform Act has always provided that the "Court in determining the particular sentence to be imposed shall consider;

1.) The nature and circumstance of the offense ***and the history and characteristics of the defendant.***" 18 U.S.C. §3553a(1) (emphasis supplied) and "no limitation shall be placed on the information concerning the ***background, character*** and conduct of the defendant which the Court may receive and consider for purposes of imposing an appropriate sentence. 18 U.S.C. §3661 (emphasis supplied).

Mitigating factors that were previously discouraged except under certain circumstances or for certain purposes should be considered more broadly to the extent they bear on the sentencing considerations found in §3553a. These include age, education and vocational skills, mental and emotional condition not meeting diminished capacity standards, physical condition or appearance, employment record, family ties and responsibilities, military, civic, charitable or public service. Likewise, the limitations on each of the generally encouraged mitigating factors set forth in U.S.S.G. §5K2.10-13, 16, 20 and 22 should no longer bar considerations of these factors, to the extent they are relevant to a §3553a inquiry.

The Court may post <u>Booker</u> consider formerly discouraged factors or facts that would not have met pre-<u>Booker</u> standards for departure to impose a lower sentence. See <u>United States vs. Antonakopoulos</u>, 399 F.3d 68 (1st Cir. 2005).

4

## II. BASIS FOR A DOWNWARD DEPARTURE SENTENCE

**a. The Defendant has provided substantial assistance, and cooperated in the investigation and prosecution of this, and other cases.**

It is respectfully submitted that as early as June 2000, the Defendant Peter Maggio met with representatives of the United States Attorneys Office, and Federal Agents to assist them in understanding the nature and complexity of the transactions in which Mr. Maggio was involved, and which form the basis of the instant case. Maggio's pre indictment cooperation included, but was not limited to meeting with agents, reviewing documents and explaining the intricacies of the numerous transactions.

From the very earliest date in the Defendant Maggio informed the Office of the United States Attorney, that he intended to take responsibility for his actions, and when presented with the opportunity, he entered pleas of guilty, acknowledging his criminal misconduct.

The activities of Mr. Maggio, from June 2000 up to and including the present date, aided in the facilitation of justice, by sparing judicial time and resources, which would otherwise be necessary in order to prosecute the instant case. Maggio's decision to cooperate and assist the government in the instant case is in counsel's opinion, one of a number of reasons, his co-defendants entered pleas of guilty, saving the government the necessity of preparing for and having a trial.

Every circuit that has considered the relationship between acceptance of responsibility and rehabilitation in light of the Supreme Court's decision in Koon has held that post-offense rehabilitation may serve as a basis for downward departure. See; United States v Bradstreet, 207 F.3d 76 (1st Cir. 2000); United States v. Green, 152 F.3d 1202, 1207 (9th Cir.1998) (affirming 11-level downward departure for rehabilitation); United States v. Brock, 108 F.3d 31, 34 (4th Cir. 1997); United States v.

5

Sally, 116 F.3d 76, 79 (3rd Cir. 1997); United States v. Core, 125 F.3d 74, 78 (2nd Cir. 1997); United States v. Kapitzke, 130 F.3d 820, 823 (8th Cir. 1997); United States v. Rhodes, 145 F.3d 1375, 1383 (D.C.Cir. 1998); United States v. Jones, 158 F.3d 492, 502-03 (10th Cir.1998); United States v Rudolph, 190 F.3d 720, 722-23 (6th Cir 1999); United States v. Rhodes, 145 F.3d 1375, 1379 (D.C.Cir.1998); and United States v. Core, 125 F.3d 74, 77-78 (2nd Cir. 1997).

In United States v. Brock, 108 F.3d 31, 34 (4th Cir. 1997), the Court found that it was not improper for the district court to consider the defendant's efforts at post-offense rehabilitation as grounds for a downward departure. The Brock court expressly found that the previous Fourth Circuit holding that post-conviction rehabilitation could never be a basis for departure was expressly over-ruled by Koon. Id. at 35. Such a departure is warranted where the factor is "present to such an exceptional degree, that the situation cannot be considered typical of those circumstances in which an acceptance of responsibility adjustment is granted." Id.

Similarly, in United States v. Maier, 975 F.2d 944, 948 (2nd Cir. 1992), the Court held that a defendant's post-offense rehabilitation is a permissible basis for a downward departure.  The Court held that "awareness of one's circumstances and the demonstrated willingness to act to achieve rehabilitation, thereby benefiting the individual and society," can remove a case from the heartland of typical cases, thus constituting a valid basis for departure. Id. See also;  United States v. Workman, 80 F.3d 688, 701 (2nd Cir. 1996)("[P]ost arrest rehabilitation efforts by  . . . defendants may justify downward departures under appropriate circumstances.")

At least one Circuit has determined that a defendant's remorse is a permissible basis for downward departure.  United States v Fagan, 162 F.3d 1280 (10th Cir. 1998). The Tenth Circuit held that "[b]ecause remorse is not a prohibited factor, but a factor already considered in the Sentencing Guidelines, a sentencing court may depart downward if it finds that remorse is present to an exceptional degree." Id. 1284-85.

6

In <u>United States v Bradstreet</u>, 207 F.3d 76 (1st Cir. 2000), the district court found that because of Bradstreet's extraordinary efforts toward rehabilitation, community service, and efforts at educating his fellow inmates, his rehabilitation took his case outside the heartland of the Guidelines. The district court found "Bradstreet's efforts at post-sentencing rehabilitation [to be] exceptional, unusual, and worthy of recognition." Therefore, the departure was warranted. <u>Id</u>. at 82-83.

The Defendant submits that his early plea of guilty, and his pre indictment cooperation and conduct leading up to the plea of guilty, provides grounds for a downward departure. The Defendant submits that his conduct does not squarely fall into either § 3E1.1 or 5K1.1 of the Guidelines'. Defendant's conduct facilitated the proper administration of justice to an extraordinary degree, and takes his case outside of the heartland of the Guidelines' cases, warranting a downward departure.

In <u>United States v Garcia</u>, 926 F.2d 125 (2nd Cir. 1991), the defendant facilitated the proper administration of justice in district court when he entered a guilty plea early on, and was willing to testify against two codefendants. In turn, his two co-defendants were prompted to plead guilty. The Second Circuit held that the Defendant's conduct did not fall within the § 5K1.1 of the Sentencing Guidelines authorizing downward departures for substantial assistance to authorities or under § 3E1.1 for acceptance of responsibility. <u>Id</u>. at 126-28. The Court held that the Defendant's conduct in facilitating the proper administration of justice in the district court was a permissible ground for a downward departure. <u>Id</u>. See also, <u>United States v Volpe,</u> 224 F.3d 72 (2nd Cir. 2000)(noting that activities facilitating the proper administration of justice may form the basis for a downward departure).

The Defendant recognizes that this Circuit has stated previously that a downward departure was not permissible based upon substantial assistance to the judicial system. See; <u>United States v. Shrewsberry</u>, 980 F.2d 1296 (9th Cir. 1992), cert. denied, 126 L. Ed. 2d 85, 114 S. Ct. 120 (1993). However, the Defendant would point

7

out that this decision was prior to the Supreme Court's decision in United States v. Koon, 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). Notably Koon expanded the amount of discretion a district court has in determining whether to depart from the Guidelines. See; United States v. Brock, 108 F.3d 31, 34-35 (4th Cir. 1997)(overruling prior Fourth Circuit precedent and holding that after Koon, post-conviction rehabilitative efforts constitute a basis for downward departure)  Notably, this Circuit has not decided whether facilitation of the administration of justice is a basis for downward departure, since the decision in Koon.

The Defendant submits that similar to the situation in Brock, the Supreme Court's decision in Koon effectively overrules prior decisions that held the facilitation of the administration of justice was not a permissible ground to depart downward. See; United States v Dethlefs, 123 F.3d 39, 46 (1st Cir. 1997). The Defendant submits that his efforts in cooperation with the authorities and the judicial system take his case outside of the heartland of Guidelines cases, and allows this Court to depart downward.

The Defendant has greatly assisted in the administration of justice.  The Defendant immediately admitted his guilt, and cooperated with the authorities to end the offense. Maggio did not attempt to go to trial, but freely admitted to his conduct. As a result of his early admissions, cooperation and remorse, the resources of the judicial system have been saved. The Defendant's decisions early on, and throughout this case, have facilitated the administration of justice, and saved this Court much time and expense. Accordingly, the Defendant's conduct was extraordinary and it resulted in the swift and smooth facilitation of justice in the district court. Accordingly, a downward departure is warranted.

The Defendant Maggio further submits that, as will be argued at the time of sentencing, he provided substantial assistance to representatives of law enforcement in other unrelated matters, which he submits the Court can recognize and incorporate as

8

one of a number of factors which would warrant the imposition of a lesser sentence.

Counsel acknowledges that the First Circuit has held that a sentence departure for substantial assistance must come from within the confines of the sentencing guideline §5K1.1, and a district court is not empowered to independently grant a departure for that reason under sentencing guideline 5K2.0.  United States v. Cruz Mercado, 360 Fed 3rd 30 (2004).

The Defendant's assistance, although arguably not adequate in the view of the Office of the United States Attorney to warrant the filing of a 5K 1.1 motion, is nevertheless one of a number of factors, which counsel would urge the Court to consider when deciding whether Maggio's present situation presents unusual or exceptional circumstances when viewed collectively, would justify imposition of a downward departure sentence.

### b.    Maggio is Bipolar and suffers from a diminished capacity.

The conduct which resulted in the return of the instant indictment occurred between July 1998, and May 2000, when the Defendant Maggio was undiagnosed as suffering from a bipolar disorder.  During the relevant time period the Defendant was actively cooperating with the Office of the United States Attorney, in the prosecution of Constance Cirino and others, while simultaneously committing criminal acts which resulted in the instant indictment.

It is respectfully submitted that as noted in the Presentence Investigation Report at paragraphs 270 through 273, the Defendant during the relevant time period suffered from an undiagnosed Bipolar I disorder.  This diagnosis was made in 2002 by a series of Massachusetts medical professionals, and confirmed by Dr. Mark Boner the Clinical Director at the Federal Medical Center located in Butner, North Carolina, following Maggio's incarceration.

Dr. Dan V. Iosifefca at the Mass General Hospital, in his report dated April 8, 2002[1], notes that the Defendant was first diagnosed with Bipolar I in January 2002, a condition which makes him prone to mood swings and intense anxiety. His mood can oscillate between periods of hypomania and depression. Dr. Iosifefca further opined that episodes of hypomania could also have been associated with excessive behavior, such as excessive spending, or a tendency to disregard rules and regulations.

The Defendant's treatment continued at the Massachusetts General Hospital Department of Psychiatry, with psychologist Dr. Kenneth Park (who began treating Maggio in January 2002). Dr. Park noted that when in a hypomania state, Mr. Maggio typically became increasingly impulsive with poor planning and poor judgment. As of August 22, 2002 (as Maggio continued with his treatment) Dr. Park noted that Maggio expressed his remorse regarding the numerous mistakes he had made in the past, and he has shown his dedication to changing his behaviors for the future. (See Dr. Park's report dated August 22, 2006).[2]

Dr. Park suggests that although Bipolar disorder is not a cause for unlawful behaviors, it can cause impulsivity, poor organization, poor judgment, which may be implicated in past inappropriate behavior.

Counsel respectfully submits that during the relevant time period, as evidenced by the Defendant's repeated involvement in financial misconduct, the Defendant suffered from a significantly reduced mental capacity. A departure in the discretion of the Court would be warranted to reflect the extent to which the Defendant Maggio's reduced mental capacity contributed to the commission of the instant offenses.

A normal person facing incarceration for financial misconduct, would not likely commit further offenses, while under indictment and awaiting sentencing, unless he suffered from a diminished mental capacity as a result of being Bipolar.

---

[1] Original letter delivered to the Court by courier.
[2] Original letter delivered to the Court by courier.

In the instant case sentencing guideline §5K 2.13 provides that a sentence below the applicable guideline range maybe warranted if the Defendant committed a non-violent offense while suffering from a significantly reduced mental capacity. The extent of the departure should reflect the extent to which the reduced mental capacity contributed to commission of the offense. United States v. Shore, 143 Fed.Supp.2d 74 (2001).

The Sentencing Guideline manual language does not require a finding that the Defendant's impairment is somehow extraordinary, unique, or outside of the heartland, as those terms had been understood elsewhere in the guidelines. Rather the standard focuses only on the case at hand. The application note following section 5K 2.13 defines "significantly reduced mental capacity", as "a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the Defendant knows is wrongful." n18 §5K2.13, cmt.n.1.

In addition, the amended guideline mandates that a court find the "significantly reduced mental capacity…contributed," at least some degree, "to the commission of the offense." This does not, however, require that the condition be the but-for or sole cause of the offense. McBroom, 124 F. 3d at 548 n. 14; accord United States v. Canut, 12 F. 3d 1506, 1515 (9th Cir.1993). ("Although the issue has never arisen in our circuit, other circuits are unanimous in holding that the disorder need be only a contributing cause, not a but-for cause or a sole cause, of the offense," (citing, among other cases, United States v. Soliman, 954 F.2d 1012, 1014 (5th Circ. 1992); United States v. Lauzon, 938 F. 2d 326, 331 (1st Cir. 1991)).

Unlike United v. Sherrer, 444 F.3d 91 (2006), the Defendant Maggio's bipolar disorder should not be discounted, because his condition was unknown and untreated until 2002, nor was it reactivated, as in Sherrer, because the Defendant refused to stay on medication.

11

Once the Defendant Maggio was properly diagnosed as suffering from a bipolar disorder, he sought and obtained treatment. Doctors Iosifefca and Park report Maggio's positive response to treatment. This Honorable Court should consider a downward departure based on the Defendant's bipolar disorder condition, and his having suffered from a significantly reduced mental capacity, which contributed to some degree, to the Defendant Maggio's illogical and largely unexplainable conduct in the instant case.

### c.     The Defendant's family responsibilities and circumstances warrant a downward departure.

In the instant case the Defendant Peter Maggio is divorced from his former wife Maria Maggio. The parties were granted a divorce in the Middlesex County Probate & Family Court on April 29, 2002, in part because of his ongoing criminal matters.

Maria Maggio is the sole care provider for their two daughters aged 13 and 15. Maria Maggio was diagnosed in January 2006 with evasive loburar stage 3 advanced cancer, which resulted in her first undergoing chemotherapy treatments followed by a full mastectomy on June 27, 2006. As of this writing, Mrs. Maggio is undergoing a regiment of intense radiation treatment. In addition, Ms. Maggio receives a monthly lupron shot in order to depress her estrogen level, in an effort to starve the type of cancer from which she suffers.

The prognosis for Maria Maggio is not very good, and should she lose her battle with cancer, the Defendant's two young children will essentially have no one upon whom to rely, other than the Defendant. As noted in the personal section of the Presentence Investigation Report at paragraphs 254 -262, the Defendant has no family or relatives with the exception of his sister Patricia Kelley, who resides in Wilmington, Massachusetts with her husband and two children.

Counsel will be submitting prior to sentencing an updated medical report from Dr. Ilene Kuter, the Mass General Hospital treating oncologist for Maria Maggio, detailing her current course of treatment, and prognosis.

A second and equally compelling family problem directly effected by the Defendant Maggio's continued incarceration, are his older daughter Christina's (age 15) psychological problems. Christina Maggio is currently under the care of Ilene Schwartz a psychologist for a variety of emotional problems, which in the past included an eating disorder and bulimia. Christina suffers from a low self image, and continues to remain extremely upset that her father is facing further incarceration and imprisonment.

In September of 2002, Dr. Richard Cuneo was of the opinion that Christina Maggio was severely depressed, suffering from an eating disorder, and that her depression stems from her father having increased legal difficulties.[3] Counsel anticipates receiving an updated report from psychologist Ilene Schwartz, who is currently treating Christina Maggio.

As noted, in previous correspondence submitted to the Court, the Defendant's former wife's condition is extremely serious. Further, the Defendant's children, as a result of their mother's illness and their father's circumstances both are experiencing psychological difficulties and related emotional problems.

In United States v. Roselli, 366 F.3d 58 (2004), the court found a downward departure for extraordinary family circumstances was appropriate, when a defendant has two children requiring specialized around the clock care, adequate help was not available, and the other party was battling a debilitating health problem.

In the case at bar, the Defendant Maggio's former wife Maria is battling life threatening cancer, one of his two daughters is suffering with severe emotional

---

[3] See September 245, 2002 letter from Dr. Richard Cuneo delivered by courier.

13

problems, and there are no other family member or individual who can care for his two adolescent daughters, if Maria Maggio's debilitating and potentially life threatening illness, worsens.

Counsel respectfully submits that the Defendant Maggio has extraordinary family obligations, and this Honorable Court must measure him against all other defendants, no matter the crime of his or her conviction, and determine whether Maggio is irreplaceable. Counsel is not suggesting that Mr. Maggio does not deserve to be punished for his misconduct, but rather that his two young daughters and his ill former wife do not. A downward departure because of his family circumstances is predicated on a humane concern for others, which this Court has within in its discretionary power. See United States v. Lacarubba, 184 F.Supp.2d (2002).

Counsel respectfully submits that the magnitude of the Maggio family's problems, the seriousness of Maria. Maggio's medical condition, and the absence of family members or others to care for his two daughters, give the Court a valid reason to impose a downward departure sentence for the Defendant Maggio.

### d. A downward departure sentence would assist in avoiding unwarranting sentence disparities among defendants who have been found guilty of similar conduct.

In the instant case, counsel submits co-defendant Jeffrey A. DeVeau was in an equal position to Maggio, as it relates to his role in the charged conspiracy to commit mail and wire fraud. Both Maggio and DeVeau cooperated with the government's investigation, and both individuals admitted their guilt to similar criminal conduct.

In addition, it is the Defendant Maggio's position that Jeffrey DeVeau personally netted in excess of $1.3 million dollars in the form of commissions, kickbacks and other payments. DeVeau (who does not have a prior criminal history) received a sentence of one year and one day imposed by the Honorable Chief Judge

Norman A. Mordue of the U.S. District Court for Northern District of New York, following a Rule 20 transfer of his case to the Northern District of New York.

Counsel is mindful of the criminal history guideline distinctions between DeVeau and Maggio, however, even after factoring in guideline adjustments, the potential guideline range to which Maggio is exposed, if this Honorable Court sentences him within the guideline ranges, as compared to the sentence imposed by DeVeau, would result in a vastly disproportionate sentence, an event not intended by the sentencing guidelines.

The Defendant Maggio does not suggest his sentence should mirror the sentence imposed on DeVeau, but rather using the sentence DeVeau received as a starting point, a downward departure sentence should be imposed by this Court, in order to bring Maggio's sentence into some form of parity with the sentence DeVeau received.

Basing a departure on grounds of disparity and sentencing alone may be beyond the district court's authority, however, counsel submits it as an additional cumulative factor to be considered by the Court. (See United States v. Colby, 367 F.Supp.2d 1 (2005)).

    e.    **A lengthy sentence of incarceration will not serve for any just purpose.**

As the Court will note from the Presentence Investigation Report, the Defendant Peter Maggio is a forty year old, divorced high school graduate, who is without any assets. Mr. Maggio has as of this writing, served a sentence of ten months on home confinement, pursuant to a sentence imposed by this Honorable Court, and has been incarcerated as a result of the sentence imposed by the Honorable Judge Zobel since February 20, 2003 (a period of three years and eight months). In addition, as noted in the Presentence Investigation Report, Mr. Maggio was incarcerated for approximately

15

three and one half months at various times during the pendency of the other matters, that were previously before other judges of this Court.

Counsel respectfully submits that the Defendant's incarceration for almost the last four years, is a more than adequate deterrent to dissuade him from committing any additional offenses. No offenses have occurred after May 2000, notwithstanding the fact that the Defendant was at liberty until early 2003.

The Government was fully aware of the conduct which resulted in the return of the instant indictment as early as the spring of 2000, however, they chose to delay seeking an indictment until November 9, 2004. The delay in seeking an indictment prevented the Defendant from entering early pleas of guilty, which would have given this Court an opportunity to impose a partially concurrent sentence, with the sentence he was then serving.

### III.     CONCLUSION

In the case at bar, based on the totality of the circumstances, as more fully set forth above, this Court can fashion an appropriate sentence, taking into account all of the statutory factors, and the guidelines which are now advisory, when imposing a sentence that is sufficient, but not greater than necessary. A sentence which balances the convergence of the factors the Court must consider in a totality of the circumstances analysis.

Admittedly, the Defendant Peter Maggio has engaged in a series of past criminal conduct, however, at this juncture, taking into account his age, dire family circumstances, his previously undiagnosed bipolar condition, and the assistance he provided to the Government, the Court can in the exercise of it's discretion, impose a downward departure sentence, which provides a just punishment, and no more.

The Defendant, having served approximately four years in custody, has learned all that can be learned from a sentence of incarceration.

Counsel respectfully asks this Honorable Court to impose a sentence below the guideline range for the reasons set forth above, and so as to provide the Defendant with hope for the future, and perhaps of greater importance to give hope to the family and children of the Defendant, who have suffered most from the Defendant's past misconduct.

>
> Respectfully submitted,
> Peter V. Maggio
> By his attorney,
>
> */s/ James Michael Merberg*
>
> _____
> James Michael Merberg, Esquire
> B.B.O. No. 343020
> 66 Long Wharf
> Boston, Massachusetts 02110
> Tel. (617) 723-1990