```
                    IN THE UNITED STATES DISTRICT COURT

                      FOR THE DISTRICT OF MASSACHUSETTS
```

|  |  |
|---|---|
| UNITED STATES OF AMERICA | ) CRIMINAL CASE NO. 04-10231-MLW |
| v. | ) |
| PETER V. MAGGIO, III, *ET AL.* | ) |

<u>GOVERNMENT'S SENTENCING MEMORANDUM</u>
<u>RE: DEFENDANT **MATT HAVEY**</u>

MATT HAVEY has pleaded guilty to:

    Count One -- Conspiracy

    Count 7 -- Wire Fraud

    Count 8 -- Mail Fraud

The Government submits the following matters for this Court's consideration in connection with the sentencing of defendant MATT HAVEY:

I.    The Government did not file objections to the draft PreSentence Report. However, as noted by the Probation Department, the Government reconfirms its commitment to recommend a finding as to defendant HAVEY that the loan amounts aggregated $$1,505,772 and that the net losses from those loans totaled $617,608, as set forth in a letter filed with this Court at the change of plea on June 15, 2006.

    The variance between the Government's calculation of loss and the Probation Department stems from Probation assessing HAVEY for one additional loan, with a loss of $620,780, resulting in an aggregate loss of $1,238,388 as calculated by Probation. *See* PSR at ¶222, loan entry for 10/22/99. As to HAVEY only, variance between the Government calculation and Probation's calculation does result in a guidelines increase of 1 level.

II. The Government submits the following with regard to the defendant's Objections To The Presentence Report and Sentencing Memorandum:

   A. HAVEY does not appear to object to application of enhancement for "more than minimal planning" pursuant to USSG §2F1.1(b)(2). He does, however, object to the alternative application of the same guideline for "a scheme to defraud more than one victim." HAVEY Sent. Mem. at 7-8.

      1. If the enhancement applies for either reason, the objection appears to draw a distinction without a difference.

      2. HAVEY acknowledges that the 1998 Guidelines Manual applied by the Probation Department "is indeed ... merciful" to him, but then argues that enhancement under §2F1,1(b)(2) for "more than one victim" was deleted from the guidelines when a 2001 manual revision merged §2F1.1 with §2B1.1, and now applies when there are "10 or more victims." Thus, HAVEY argues, the enhancement should no longer apply to him. This is an impermissible effort to "pick and choose" among guidelines manuals.

      3. In any event, HAVEY was an active part of what he knew was an overarching conspiracy which clearly had more than 10 victims. *See* PSR at ¶ 38.

      4. Nor does HAVEY cite any authority for the proposition that he must personally know how many victims resulted from the scheme in which he participated.

   B. HAVEY objects to enhancement under §2F1.1(b)(5)© for "use of sophisticated means".

      1. Where the enhancement applies to the case at large, it applies to individual defendants. The Government incorporates by reference, its discussion at pp. 6-11 of the Government's Sentencing Memorandum Re: Michael O'Neill.

      2. Furthermore, HAVEY personally employed sophisticated means in that he went to town hall to create two DBA construction companies, executed

2

        loan applications in the names of the DBA's [necessarily knowing that financial information *from some source* must be submitted to the lender to support the loans], and executed closing documents in his purported capacity as the owner and operator of those DBA's.

C. HAVEY asserts that he should be assigned a "minor role in the overall scheme." HAVEY Sent. Mem. at 11.

  1. In effect, HAVEY has already received the benefit he seeks.

  2. Neither the Government nor the PSR holds HAVEY liable for aggregate losses from the overall scheme. Rather, he is being held accountable for those loans and losses in which HAVEY was directly involved. If this Court adopts either the PSR or the Government's letter calculation of losses attributable to HAVEY -- $ 1,238,338 or $617,608, respectively -- HAVEY would not be held responsible for the aggregate $15,731,860 losses from the overall scheme.

  3. HAVEY's role in the fraudulent scheme is detailed in the PSR, and cannot support a finding that he played a minor role in the overarching conspiracy. In fact, HAVEY recruited his brother-in-law, Todd Demasi, as a "straw" borrower, *see* PSR at ¶26, thereby enlarging the scheme.

  4. It is even more clear that HAVEY cannot claim to be a "minor participant" regarding the reduced loss level derived from consideration of only those loans in which he was directly involved.

D. HAVEY attempts to justify a sentence of "a year and a day" by seeking to draw a parallel line between his case and the sentence of co-defendant DEVEAU in the Northern District of New York. *See* HAVEY Sent. Mem. at 12-13. The comparison is unavailing.

  1. HAVEY relies upon the fact that he and DEVEAU each pleaded guilty to conspiracy, one mail fraud and one wire fraud to declare: "There having been no substantive or substantial difference between

>     [HAVEY and DEVEAU], there would be no reason to treat the Defendant fundamentally different from Deveau."  HAVEY Sent. Mem. at 12.

2. The obverse of HAVEY's statement is that if there are "substantive or substantial difference[s]" there would be reason to differentiate between them.[1]

3. DEVEAU did not commit violations of conditions of release warranting the court to revoke his release and incarcerate him pending resolution of this case.

4. DEVEAU earned a Section 5K1.1 departure for his cooperation in the investigation and prosecution of this case.  He did so from the outset by disclosing his own involvement, disclosing the identity and involvement of others, providing affirmative assistance to the Government, and agreeing to testify at trial.  As part of his assistance DEVEAU put himself at risk by "wearing a wire" to record an FBI-monitored meeting where he made kickback payments to co-defendant O'NEILL.

5. DEVEAU did not attempt to portray himself as a victim of someone else's scheme.

Respectfully submitted this 18th day of October, 2006.

>                                    MICHAEL J. SULLIVAN
>                                    UNITED STATES ATTORNEY
>
>
>                               By:  /s/ Victor A. Wild
>                                    VICTOR A. WILD
>                                    Assistant U.S. Attorney
>                                    One Courthouse Way
>                                    Boston, MA 02210
>                                    (617) 748-3100

---

[1] In fact, HAVEY argues that avoiding "unnecessary paperwork" for the Bureau of Prisons warrants a straight "time served" sentence, which would be <u>less</u> than DEVEAU's sentence.

<u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day served upon the attorneys listed below a copy of the foregoing document via ECF.

                     <u>/s/ Victor A. Wild</u>
                     VICTOR A. WILD
                     Assistant U.S. Attorney

| | |
|---|---|
| James M. Merberg, Esq.<br>66 Long Wharf<br>Boston, MA 02110<br>Attorney for Peter V. Maggio | William M. White, Esq.<br>1 Faneuel Hall, 3rd Floor<br>Boston, MA 02109<br>Attorney for Sean Sacco |
| Joseph S. Oteri, Esq.<br>20 Park Plaza<br>Boston, MA 02116<br>Attorney for Michael R. O'Neill | Elliott M. Weinstein, Esq.<br>228 Lewis Wharf<br>Boston, MA 02110<br>Attorney for William A. Howe |
| Scott P. Lopez, Esq.<br>24 School Street<br>Boston, MA 02108<br>Attorney for Louis A. Paradiso | Roger Witkin, Esq.<br>6 Beacon Street<br>Boston, MA 02108<br>Attorney for Matt A. Havey |